IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


ORIGEN FINANCIAL, L.L.C.                                        PLAINTIFF


VS.                            CIVIL ACTION NO. 3:07-cv-318-WHB-LRA


CHRISTY LYNN W. THOMPSON and
CHRISTOPHER K. THOMPSON                                         DEFENDANTS


## OPINION AND ORDER

This cause is before the Court on the Motion of Plaintiff, Origen Financial, L.L.C., for Summary Judgement. Defendants have not responded to the Motion. The Court has considered the Motion, attachments thereto, as well as supporting and opposing authorities and finds that the Motion is well taken and should be granted.


## I.  Factual Background and Procedural History

On or about January 31, 2006, Defendant, Christy Lynn W. Thompson ("Christy Thompson"), entered a Retail Installment Contract and Security Agreement ("Contract") with Family Home Center for the purchase of a 2006 Waverlee Manufactured Home ("Manufactured Home"). The Contract contains an arbitration provision, which provides, in relevant part:

> **Arbitration**. ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT OR THE PARTIES THERETO SHALL BE RESOLVED BY BINDING ARBITRATION BY ONE ARBITRATOR SELECTED BY YOU WITH MY CONSENT. THIS AGREEMENT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE

**COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT AT 9 U.S.C. SECTION 1.   JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THE PARTIES AGREE AND UNDERSTAND THAT THEY MAY CHOOSE ARBITRATION INSTEAD OF LITIGATION TO RESOLVE DISPUTES. THE PARTIES UNDERSTAND THAT THEY HAVE A RIGHT TO LITIGATE DISPUTES IN COURT, BUT THAT THEY PREFER TO RESOLVE THEIR DISPUTES THROUGH ARBITRATION. EXCEPT AS PROVIDED HEREIN, THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN).   THE PARTIES AGREE AND UNDERSTAND THAT ALL DISPUTES ARISING UNDER CASE LAW, STATUTORY LAW AND ALL OTHER LAW, INCLUDING, BUT NOT LIMITED TO, ALL CONTRACT, TORT AND PROPERTY DISPUTES WILL BE SUBJECT TO BINDING ARBITRATION IN ACCORD WITH THIS CONTRACT.   THE PARTIES AGREE THAT THE ARBITRATOR SHALL HAVE ALL POWERS PROVIDED BY LAW, THE CONTRACT AND THE AGREEMENT OF THE PARTIES.   THESE POWERS SHALL INCLUDE ALL LEGAL AND EQUITABLE REMEDIES INCLUDING, BUT NOT LIMITED TO, MONEY DAMAGES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF, NOTWITHSTANDING ANYTHING HEREUNTO THE CONTRARY, YOU RETAIN AN OPTION TO USE JUDICIAL (FILING A LAWSUIT) OR NON—JUDICIAL RELIEF TO ENFORCE A SECURITY AGREEMENT RELATING TO THE MANUFACTURED HOME.   THE INSTITUTION AND MAINTENANCE OF A LAWSUIT TO FORECLOSE UPON ANY COLLATERAL, TO OBTAIN A MONETARY JUDGMENT OR TO ENFORCE THE SECURITY AGREEMENT SHALL NOT CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY TO COMPEL ARBITRATION REGARDING ANY OTHER DISPUTE OR REMEDY SUBJECT TO ARBITRATION IN THIS CONTRACT, INCLUDING THE FILING OF A COUNTERCLAIM IN A SUIT BROUGHT BY YOU PURSUANT TO THIS PROVISION.**

See Mot. for Summ. J., Ex. 1.  The Contract was later assigned to Plaintiff, Origen Financial, L.L.C. ("Origen"), which perfected a security interest in the Manufactured Home.  Under the terms of the Contract, Christy Thompson agreed to make installment payments to Origen but has not tender such payments since August 2, 2006.

On September 28, 2006, Origen sent Christy Thompson a Notice of Default and Right to Cure Default Notice.  According to Origen:

> While Origen is entitled to immediate possession of the Manufactured Home (in addition to a monetary judgment against [Christy] Thompson for her indebtedness to Origen), and has demanded that [Christy] Thompson surrender the Manufactured Home to it, she has refused to do so and has thereby wrongfully retained possession of Origen's collateral."

See Compl., at ¶ 12.  On February 21, 2007, Origen filed a replevin action against Christy and Christopher Thompson (collectively, "Thompsons") in the County Court of Pike County, Mississippi, seeking to enforce its security interest and obtain possession of the Manufactured Home.  Thereafter, on March 6, 2007, the Thompsons filed a lawsuit against Origen, Family Home Center, Inc., and Waverlee Homes, Inc., in the Chancery Court of Pike County, Mississippi, alleging claims of breach of contract; breach of the implied warranties of mechantability, fitness, and fitness for a particular purpose; negligence; negligent and/or intentional infliction of emotional distress; and rescission.  Each of these claims arise out of the sale, installation, and financing of the Manufactured Home.  On June 5, 2007, Origen filed the subject lawsuit in this Court seeking an Order compelling the Thompsons to arbitrate their claims in accordance with the arbitration provision in the Contract, and enjoining the chancery court proceedings.

On September 12, 2007, Origen filed a Motion for Summary Judgment.  In accordance with the Federal Rules of Civil Procedure and with the Uniform Local Rules of the United States District Courts for the Northern and Southern Districts of Mississippi

("Local Rules"), the Thompsons's Response to the Motion was due on September 28, 2007. On September 27, 2007, counsel for the Thompsons submitted an *ore tenus* Motion for Extension of Time, which was granted by the Court, and the Thompsons were ordered to respond to the Motion for Summary Judgment on or before October 18, 2007. To date, no Response has been filed. Under the Local Rules of this Court: "If a party fails to respond to any motion, other than a motion for summary judgment, within the time allotted, the court may grant the motion as unopposed." See Local Rule 7.2(C)(2). As Origen has moved for summary judgment in this case, the Court must consider the Motion on the merits.

## II.  Legal Analysis

### A.  Subject Matter Jurisdiction

Before the Court considers the merits of the Motion for Summary Judgment, it must be satisfied that it can properly exercise federal subject matter jurisdiction in this case. In its Complaint, Origen alleges that this Court may properly exercise subject matter jurisdiction in accordance with 28 U.S.C. § 1332. This statute provides, in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –

> (1) citizens of different States.

28 U.S.C. § 1332(a)(1).

4

The Complaint alleges that Origen is a Delaware limited liability company with its principal place of business in the State of Virginia, and that the Thompsons are resident citizens of the State of Mississippi.  These allegations are admitted by the Thompsons.  <u>See</u> Answer, ¶¶ 1 and 2, respectively.  Accordingly, the Court finds that the diversity of citizenship requirement of 28 U.S.C. § 1332 is satisfied.

As regards the amount in controversy:

> The United States Court of Appeals for the Fifth Circuit has held that district courts, when considering whether the "amount in controversy" requirement has been satisfied in a motion to compel arbitration, "should look through to the possible award resulting from the desired arbitration, since the petition to compel arbitration is only the initial step in litigation which seeks as its goal a judgment affirming the award." <u>Webb v. Investacorp., Inc.</u>, 89 F.3d 252, 256 (5th Cir. 1996) (quoting <u>Davenport v. Procter & Gamble Mfg. Co.</u>, 241 F.2d 511, 512 (2d Cir. 1957)).  <u>See also</u> <u>Manze v. State Farm Ins. Co.</u>, 817 F.2d 1062, 1068 (3d Cir. 1987).  Therefore, "the amount in controversy in a motion to compel arbitration is the amount of the potential award in the underlying arbitration proceedings." <u>Webb</u>, 89 F.3d at 256.

<u>General Elec. Capital Corp. v. Haymer</u>, 151 F. Supp. 2d 753, 756 (S.D. Miss. 2001).  In their chancery court complaint, the Thompsons demand $500,000 in actual and punitive damages against Origen and the other named defendants.  <u>See</u> Compl., at Ex. F (Chancery Court Complaint).  Additionally, the Fifth Circuit has held that a claim for punitive damages is included in the calculation of the amount in controversy.  <u>See</u> <u>St. Paul Reinsurance Co., Ltd. v. Greenberg</u>, 134 F.3d 1250, 1253 (5th Cir. 1998).  The

Court is aware that punitive damages awards against finance and insurance companies in Mississippi have exceeded $75,000.  See, e.g., Independent Life & Acc. Ins. Co. v. Peavy, 528 So. 2d 1112 (Miss. 1998) (affirming punitive damages award of $250,000); Andrew Jackson Life Ins. Co. v. Williams, 566 So. 2d 1172 (Miss. 1990) (affirming punitive damages award of $200,000).  As the Thompsons seek $500,000 in damages on the claims they have alleged against Origen in the chancery court proceeding, and as the award on their punitive damages claim could exceed $75,000, the Court finds that the potential award in arbitration exceeds $75,000.  Accordingly, the Court finds that the amount in controversy requirement of 28 U.S.C. § 1332 is satisfied.  Having found that both the diversity of citizenship and the amount in controversy requirements of 28 U.S.C. § 1332 have been satisfied, the Court finds it may properly exercise subject matter jurisdiction over this case in accordance with that statute.

**B.  Motion for Summary Judgment**

**1.  Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

6

moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The movant need not, however, support the motion with materials that negate the opponent's claim.  Id.  As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim.  Id. at 323-24.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." <u>Kennett-Murray Corp. v. Bone</u>, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. <u>National Screen Serv. Corp. v. Poster Exchange, Inc.</u>, 305 F.2d 647, 651 (5th Cir. 1962).

## 2. Discussion

### a. Claims of Christy Thompson

Section 2 of the Federal Arbitration Act ("FAA") provides: "A written provision in ... a contract[, evidencing a transaction involving commerce,] ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The first issue the Court must decide is whether the subject Contract, which contains the arbitration provision Origen seeks to enforce, is a "contract evidencing a transaction involving commerce." On this issue, the United States Supreme Court has held that for the purposes of the FAA, "control over interstate commerce

8

reaches not only the actual physical interstate shipment of goods but also [extends to] contracts relating to interstate commerce." Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 273-74 (1995).

In the case *sub judice*, the Contract between Origen and Christy Thompson necessarily involves interstate commerce as the financing underlying the transaction was funded with capital sources from states outside of Mississippi, specifically Delaware and Virginia.  Therefore, the subject Contract involves interstate commerce.  Additionally, the arbitration provision in the subject Contract provides, in relevant part: **"THIS AGREEMENT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT AT 9 U.S.C. SECTION 1."** See Mot. for Summ. J., Ex. 1.  Finally, the Thompsons admit that the Contract is one that evidences a transaction involving interstate commerce. See Answer, at ¶ 16.  Accordingly, the Court finds that the Contract between Origen and Christy Thompson involves interstate commerce for the purposes of the FAA.  See e.g., Allied-Bruce, 513 U.S. at 281 (indicating that the term "involving commerce" should be construed liberally as meaning "affecting commerce."); Del E. Webb Constr. v. Richardson Hosp. Auth., 823 F.2d 145, 147 (5th Cir. 1987) (finding that "[c]itizens of different states engaged in performance of contractual operations in one of those states are engaged in a contract involving commerce under the FAA.") (citations omitted).

Having found that the subject Contract involves interstate commerce, the Court next determines whether the parties should be compelled to arbitrate their claims in accordance with that Contract.  To make this determination, courts conduct a two-step analysis.  See B.M. Perez & Assocs., Inc. v. Welch, 960 F.2d 534, 538 (5th Cir. 1992).  First, the court determines whether the parties agreed to arbitrate by considering (1) whether the parties entered a valid arbitration agreement, and (2) whether the pending claim or dispute is within the scope of that agreement.  See Webb, 89 F.3d at 257-58; American Heritage Life Ins. Co. v. Beasley, 174 F. Supp. 2d 450, 454 (N.D. Miss. 2001).  In the event the court finds the parties agreed to arbitrate, it next considers whether arbitration is nevertheless foreclosed because of one or more applicable statutes or policies.  See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 626 (1985) (finding that a court must consider "whether legal restraints external to the parties' agreement foreclose... arbitration.").

On the first issue of whether the parties entered a valid arbitration agreement, Courts are instructed to "apply ordinary state-law principles that govern the formation of contracts" to determine whether a valid arbitration agreement exists.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); May v. Higbee Co., 372 F.3d 757, 764 (5th Cir. 2004).  For a contract to be valid under Mississippi law, the following elements must be

satisfied:  (1) two or more contracting parties; (2) consideration; (3) a sufficiently definite agreement; (4) legal capacity to enter a contract; (5) mutual assent; and (6) the absence of any other legal prohibition that would preclude contract formation.  See generally Rotenberry v. Hooker, 862 So. 2d 266, 270 (Miss. 2003); Lanier v. State, 635 So. 2d 813, 826 (Miss. 1994).  Origen, as the party seeking to compel arbitration, bears the burden of proving the existence of a valid, binding arbitration agreement.  See Garner v. Hickman, 733 So. 2d 191, 195 (Miss. 1999) (finding, in breach of contract actions, that the party asserting a contractual claim "has the burden of proving by a preponderance of the evidence the existence of a valid and binding contract"); Warwick v. Matheney, 603 So. 2d 330, 336 (Miss. 1992) (same).

In the case sub judice, Origen has submitted a copy of the Contract, which was entered by Christy Thompson.  See Mot. for Summ. J., Ex. 1.  In its Complaint, Origen alleges that the Contract was entered on or about January 31, 2006, that it was assigned to Origen, and that it contains the arbitration provision sought to be enforced.  Christy and Christopher Thompson have admitted each of these allegations.  See Answer, ¶¶ 5 and 16.  In addition, the Thompsons have not raised any affirmative defenses challenging the validity of the subject Contract or arbitration provision in their Answer.  See FED. R. CIV. P. 8(c) (requiring that the defenses of failure of consideration, fraud, and illegality be

11

raised affirmatively in the answer to the complaint). Accordingly, the Court finds that there does not exist a genuine issue of material fact with regard to whether Christy Thompson and Origen entered a valid contract/arbitration agreement.

On the second issue of whether the pending claim or dispute is within the scope of the arbitration agreement, the Court begins its analysis by recognizing that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)(citations omitted).  As explained by the Fifth Circuit, "[a] finding that the scope of the arbitration clause is vague does not automatically catapult the entire dispute into arbitration.  Rather, such a finding creates a presumption in favor of arbitration.  This presumption can be overcome with clear evidence that the parties did not intend the claim to be arbitrable." Harvey v. Joyce, 199 F.3d 790, 793 (5th Cir. 2000)(citing Moses H. Cone, 406 U.S. at 24-25).

The subject arbitration provision provides, in relevant part:

**ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT OR THE PARTIES THERETO SHALL BE RESOLVED BY BINDING ARBITRATION...   THE PARTIES AGREE AND UNDERSTAND THAT ALL DISPUTES ARISING UNDER CASE LAW, STATUTORY LAW AND ALL OTHER LAW, INCLUDING, BUT NOT LIMITED TO, ALL CONTRACT, TORT AND PROPERTY DISPUTES WILL**

12

**BE SUBJECT TO BINDING ARBITRATION IN ACCORD WITH THIS CONTRACT.[1]**

See Mot. for Summ. J., Ex. 1.  Based on the broad language of the subject arbitration provision, the Court finds that it encompasses the claims alleged by Christy Thompson against Origen in the underlying chancery court proceeding.  See e.g., Nauru Phosphate Royalties, Inc. v. Drago Diac Interests, Inc., 138 F.3d 160, 165 (5th Cir. 1998)(finding that "when parties include such a broad arbitration clause, they intend the clause to reach all aspects of the relationship.") (citations omitted).  Accordingly, the Court finds that Christy Thompson and Origen agreed to arbitrate the claims which are the subject of the chancery court action.

Having found that the parties to the subject Contract agreed to arbitrate, the Court next considers whether arbitration is nevertheless foreclosed because of one or more applicable statutes

---

[1]  The subject arbitration provision expressly excludes from its scope actions by Origen to enforce a security interest or to foreclose on collateral.  See Mot. for Summ. J., Ex. 1, providing:

**YOU RETAIN AN OPTION TO USE JUDICIAL (FILING A LAWSUIT) OR NON-JUDICIAL RELIEF TO ENFORCE A SECURITY AGREEMENT RELATING TO THE MANUFACTURED HOME.  THE INSTITUTION AND MAINTENANCE OF A LAWSUIT TO FORECLOSE UPON ANY COLLATERAL, TO OBTAIN A MONETARY JUDGMENT OR TO ENFORCE THE SECURITY AGREEMENT SHALL NOT CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY TO COMPEL ARBITRATION REGARDING ANY OTHER DISPUTE OR REMEDY SUBJECT TO ARBITRATION IN THIS CONTRACT ...**

or policies.  See e.g. American Heritage Life Ins. Co. v. Harmon, 147 F. Supp. 2d 511, 514 (N.D. Miss. 2001) (citing Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 680-81 (5th Cir. 1976) ("A party seeking to avoid arbitration must allege and prove that the arbitration provision itself was a product of fraud or coercion [or] that another ground exists at law or in equity that would allow the parties' contract or agreement to be revoked.").

In the case *sub judice*, with the exception of generally averring that the arbitration agreement is not valid, see Answer, at ¶ 16, Christy and Christopher Thompson have not alleged any basis for revoking or otherwise not enforcing the subject arbitration provision.   In addition, having reviewed the arbitration provision, the Court finds that there is no basis for finding that it is either procedurally or substantively unconscionable under Mississippi law.  For these reasons, the Court finds that there does not exist a genuine issue of material fact with regard to whether arbitration should be foreclosed in this case.

Having found that (1) the subject Contract involves interstate commerce, (2) the arbitration agreement is valid, (3) the claims alleged in the underlying chancery court proceeding are within the scope of the arbitration agreement, and (4) arbitration is not foreclosed by any applicable statute, policy, or state law consideration, the Court finds that Christy Thompson, as the

14

signatory to the subject Contract and arbitration provision therein, should be compelled to arbitrate the claims she has alleged against Origen in the underlying chancery court proceeding.

**b. Claims of Christopher Thompson**

Although Christopher Thompson is not a signatory to the subject Contract/arbitration provision, Origen seeks an Order compelling him to arbitrate the claims he has alleged against it in the underlying chancery court proceeding under the doctrine of equitable estoppel.[2]  The Fifth Circuit has recognized:

> In the arbitration context, the doctrine [of estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.  To allow [a party] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.

Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 268 (5th Cir. 2004).  Thus, "if a nonsignatory party's claims or defenses arise from a contract which contains an enforceable arbitration clause, then the nonsignatory is equitably estopped from avoiding arbitration."  Chew v. KPMG, LLP, 407 F. Supp. 2d 790, 800 (S.D.

---

[2] In the context of a motion to compel arbitration, federal law controls the issue of equitable estoppel.  See Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 267 n.6 (5th Cir. 2004).

Miss. 2006) (citing <u>Bailey</u>, 364 F.3d at 267). In short, "the doctrine of equitable estoppel prevents a party from 'having it both ways.'" <u>Id.</u> (citing <u>Bailey</u>, 364 F.3d at 268).

In the case *sub judice*, all of Christopher Thompson's claims against Origen in the underlying chancery court proceeding arise directly out of the subject Contract. The chancery court complaint alleges, *inter alia*:

> [Christy and Christopher Thompson] would show that not withstanding their failure to authorize the funding of the Promissory Note and the Financing Agreement entered between [Christy and Christopher Thompson] and Defendant Origen, said Defendant funded the installment note...
>
> [Christy and Christopher Thompson] would show from March 2006 through August 2006 they made bi-weekly payments to Defendant Origen notwithstanding that they had not been nor have ever been able to occupy, possess or reside in the manufactured home. [Christy and Christopher Thompson] would show that they have now ceased payments under the Installment Loan Agreement and Defendant Origen threatens repossession of the manufactured home and collection of any unpaid balance on the subject debt. [Christy and Christopher Thompson] would show that under the circumstances as set forth hereinabove they suffer immediate irreparable harm and damage if a preliminary injunction is not entered whereby Origen or any agent thereof is enjoined and prohibited pending further order of this court from repossession of the manufactured home and from any effect to collect any debt allegedly owed by [Christy and Christopher Thompson] to Defendant Origen.
>
> ... [Christy and Christopher Thompson] have suffered additional damages in the amount of $14,573.24 which represents payments made by [Christy and Christopher Thompson] to Defendant Origen and other costs associated herewith.
>
> [Christy and Christopher Thompson] would further show that they have suffered mental anguish, emotional

16

> distress, aggravation and worry as a result of the
> deliberate indifference of the Defendants to their
> obligations under the Installment Sales Agreement.

See Compl., Ex. F (Chancery Court Complaint), at ¶¶ VIII and IX.

As Christopher Thompson, in the chancery court proceeding, is

seeking to (1) enjoin Origen from enforcing its security interest

on the Manufactured Home, (2) recover payments made to Origen under

the subject Contract, and (3) recover damages for his emotional

distress which allegedly resulted because of the manner in which

Origen performed its obligations under the subject Contract, it is

clear that his claims arise from the subject Contract, which (as

found above) contains an enforceable arbitration provision.

Accordingly, the Court finds that although Christopher Thompson is

not a signatory to the subject Contract/arbitration provision, he

should nevertheless be compelled to arbitrate the claims he has

alleged against Origen under the doctrine of equitable estoppel.


c.  **Stay of Chancery Court Proceeding**

Origen requests that the Court stay the proceedings currently

pending against it in the Chancery Court of Pike County,

Mississippi.  Under the Anti-Injunction Act, a district court may

enjoin state court proceedings only where "expressly authorized by

Act of Congress, or where necessary to in aid of its jurisdiction,

or to protect or effectuate its judgments."  See 28 U.S.C. § 2283.

Under the circumstances of this case, the Court finds that a stay

is required to protect and/or effectuate its decision herein that both Christy and Christopher Thompson submit their claims against Origen to arbitration.  See e.g., American Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 712 (5th Cir. 2002) (affirming the district court's stay of a state court proceeding until completion of arbitration); Harmon, 147 F. Supp. 2d at 516-17 (finding that the "strong judicial policy favoring arbitration expressed by the Supreme Court, the plain language of the Anti-Injunction Act, and the policies embodied in the FAA warrant[ed]," staying the state court proceedings); Citifinancial, Inc. v. Lipkin, 143 F. Supp. 2d 657, 663 (N.D. Miss. 2000) (finding that "the policies embodied in the FAA militate against having ongoing state proceedings at the very time those same claims are the subject of arbitration proceedings").  For these reasons, the Thompsons's state court proceeding against Origen should be stayed until the completion of arbitration.[3]

## IV. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED the Motion of Origen for Summary Judgment [Docket No. 10] is hereby granted.  Christy Lynn W.

---

[3]This stay pertains only to the claims of the Thompsons against Origen in the state court suit.  The Thompsons are not prohibited from proceeding against the remaining Defendants in the chancery court proceeding.

Thompson and Christopher K. Thompson are hereby ordered to submit all of their claims against Origen Financial L.L.C. to arbitration in accordance with the arbitration provision contained in the Retail Installment Contract and Security Agreement that was entered on or about January 31, 2006.

IT IS FURTHER ORDERED that all proceedings relating to the claims of Christy Lynn W. Thompson and Christopher K. Thompson against Origen Financial L.L.C. in the case of <u>Christy Lynn W.</u> <u>Thompson and Husband, Christopher K. Thompson v. Family Home</u> <u>Center, Inc., Waverlee Homes, Inc., and Origen Financial L.L.C.</u>, Cause No. 2007-187, in the Chancery Court of Pike County, Mississippi, are hereby stayed pending arbitration of the Thompsons's claims against Origen Financial, L.L.C.

IT IS FURTHER ORDERED that a Final Judgment compelling arbitration and staying the chancery court proceedings shall be entered this day. Either Origen or the Thompsons may move to re-open this case if further judicial intervention is necessary to enforce the Order of this Court, or to enter judgment on the arbitration award.

SO ORDERED this the 15th day of November, 2007.


                              s/ William H. Barbour, Jr.
                              UNITED STATES DISTRICT JUDGE